United States District Court
Southern District of Texas
**ENTERED**
December 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **JACOB THOMAS,** *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-01615 |
| § | |
| **JOULE PROCESSING LLC,** *et al.*, § | |
| § | |
| Defendants. § | |

### MEMORANDUM & ORDER

Plaintiffs Jacob Thomas and JTurbo Engineering & Technology, LLC (JTurbo) bring various claims against Defendants Joule Processing LLC (Joule) and Plug Power, Inc. (Plug) stemming from Defendants' alleged misappropriation of novel hydrogen liquefaction technology and related information. ECF No. 1. Plaintiffs' claims include: violations of the Federal Defend Trade Secrets Act of 2016 (Count 1), misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (TUTSA) (Count 2), breach of contract of the Amended and Restated Exclusivity Agreement (Count 3), breach of contract of the Design Fee Agreement (Count 4), breach of contract of the Consulting Agreement (Count 5), tortious interference with prospective business relationships (Count 6), unfair competition by misappropriation (Count 7), breach of fiduciary duty (Count 8), and conspiracy to commit breach of fiduciary duty (Count 9).

Defendants move to dismiss Counts 4 through 9. ECF No. 17. Defendants do not move for dismissal of Counts 1 through 3. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED IN PART**. Counts 4, 6, 7, 8, and 9 are **DISMISSED WITH PREJUDICE.** Count 5

is **SEVERED** and **TRANSFERRED** to the United States District Court for the Northern District of New York.

## I.    BACKGROUND[1]

Thomas is the founder and president of JTurbo, a company that sells hydrogen liquefaction technology and provides energy consulting services. In his role at JTurbo, Thomas developed new hydrogen liquefaction technology that requires 50% less energy per unit of output than comparable designs. In addition to creating this technology, JTurbo also invested resources in the production and sale of the technology. This included developing process simulations and data, business operation methods, pricing models, and vendor and customer lists, among other things.

JTurbo collaborated with Joule to market the hydrogen liquefaction technology. On April 29, 2021, Joule and JTurbo entered into an Exclusivity Agreement. Under this agreement, Joule obtained the right to be the exclusive packager and provider for JTurbo's hydrogen liquefaction technology in exchange for paying JTurbo a design fee.

In May 2021, Plug contacted Joule and JTurbo to discuss its desire to develop a hydrogen liquefier for its own use. In a meeting on or about September 29, 2021, JTurbo and Joule verbally agreed to sell Plug hydrogen liquefaction units built using JTurbo's technology, process simulations, and designs. In exchange, Joule consented to pay JTurbo $500,000 per unit sold to

---

[1] At this stage, all well-pleaded factual allegations are accepted as true. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

Plug, up to the first three units. JTurbo memorialized the terms of this agreement, deemed the Design Fee Agreement, in a subsequent email to Joule.

On January 10, 2022, JTurbo and Joule executed an Amended and Restated Exclusivity Agreement (Amended Exclusivity Agreement). The Amended Exclusivity Agreement licensed JTurbo's hydrogen liquefaction technology to Joule and permitted Joule to sublicense the technology to clients. In exchange, JTurbo was to receive various fees, which would be negotiated separately for each subsequent project. As part of the sublicensing process, Joule and JTurbo were to jointly negotiate the sublicensing fees with each prospective customer. Pursuant to this agreement, JTurbo shared its hydrogen liquefaction technology, process simulations, vendor lists, and process designs with Joule. The Amended Exclusivity Agreement also contained the following merger clause:

> This Agreement . . . constitutes the entire Agreement of the Parties with respect to the subject matter hereof, and supersedes any and all previous Agreements by and between JTurbo (or JTurbo principals) and Joule (or Joule's principals) with respect to the subject matter hereof, if any, as well as any and all proposals, oral or written, and all negotiations, conversations or discussions heretofore had between the parties related to this Agreement.

ECF No. 7 at 9.

On or about January 10, 2022, Plug and JTurbo entered into a Consulting Agreement. Under this agreement, Thomas provided Plug with expertise to develop its own hydrogen liquefaction plant units. Plug agreed to pay Thomas $300 an hour for consulting services not to exceed 20 hours per week for a period of two years. The agreement contains the following forum selection clause: "Any action or proceeding arising out of this Agreement shall be commenced exclusively in courts located in Albany, New York, and the parties hereby consent to the

3

jurisdiction of any state or federal court located therein." ECF No. 11-1 at 5. Around June 2022, Plug reduced Thomas's consulting service hours to 10 hours per week before later terminating his services before the expiration of the contract's two year period.

In January 2022, Plug acquired Joule, allegedly to access the hydrogen liquefaction technology and related business information without compensating JTurbo. At this point, it appears that the parties' business relationship began to sour. Around January 2023, Joule received orders from Nikola and TC Energy for three liquefaction plant units, the construction of which required using JTurbo's hydrogen liquefaction technology. JTurbo was not consulted or compensated in the course of these sales, nor was it compensated for the use of its technology in the sale of units to Plug under the Design Fee Agreement.

In early 2023, Plug posted on LinkedIn to advertise JTurbo's hydrogen liquefaction technology. This post supposedly disclosed details about the proprietary process simulations and data developed by JTurbo. In the post, Plug represented that it owns the hydrogen liquefaction technology.

## II.    STANDARD OF REVIEW

Defendants seek to dismiss Counts 4, 6, 7, 8, and 9 for failure to state a claim. When considering a 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* The movant carries the burden of proof for dismissal under Rule 12(b)(6). *Rittgers v. United States*, 131 F. Supp. 3d 644, 649 (S.D. Tex. 2015).

Additionally, Defendants seek dismissal of Count 5 for improper venue under either Rule 12(b)(3) or, alternatively, 18 U.S.C. § 1406(a) pursuant to a forum selection clause in the contract underlying that claim. However, the Supreme Court has clarified that, when venue is proper under federal venue statutes, Rule 12(b)(3) and § 1406(a) are not appropriate procedural vehicles for enforcing a forum-selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). Rather such cases must be evaluated under 18 U.S.C. § 1404(a)'s transfer provision. *Id.* at 55. "[P]roper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59-60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63.

### III.  ANALYSIS

#### A.  Count 4: Breach of the Design Fee Agreement

Plaintiffs allege that Joule breached the Design Fee Agreement by failing to pay JTurbo the agreed upon development assistance fee. The Design Fee Agreement was entered into orally

on September 29, 2021. However, JTurbo and Joule subsequently entered into the Amended Exclusivity Agreement in January 2022. The Amended Exclusivity Agreement contains a merger clause which states that it "constitutes the entire Agreement of the Parties with respect to the subject matter hereof and supersedes any and all previous Agreements by and between JTurbo (or JTurbo principals) and Joule (or Joule's principals) with respect to the subject matter hereof." ECF No. 7 at 9.

Because the Amended Exclusivity Agreement includes a valid merger clause, it supersedes prior agreements addressing the same subject matter. *See Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 226 (5th Cir. 2001); *Dow Chem. Co. v. Buchanan Hauling & Rigging, Inc.*, No. 4:21-CV-2604, 2022 WL 17406392, at *3 (S.D. Tex. Nov. 7, 2022), *report and recommendation adopted*, No. CV H:21-2604, 2022 WL 17405832 (S.D. Tex. Nov. 29, 2022). Both the Amended Exclusivity Agreement and the Design Fee Agreement address Joule's right to use JTurbo's hydrogen liquefaction technology and the fee JTurbo will receive in exchange. Because both agreements govern the same subject matter, the Amended Exclusivity Agreement supersedes the Design Fee Agreement. *See Spectators' Commc'n Network Inc.*, 253 F.3d at 226.

Plaintiffs do not contest the validity of the merger clause, nor do they argue that the contracts govern different subject matter. Instead, Plaintiffs contend that the Amended Exclusivity Agreement's fee term is ambiguous, and thus they should be permitted to introduce the Design Fee Agreement as parol evidence.

The Court need not reach the issue of whether the fee term in the Amended Exclusivity Agreement is ambiguous. Whether the Design Fee Agreement may be introduced as parol evidence to interpret terms in the Amended Exclusivity Agreement has no bearing on whether Plaintiffs

6

have stated a claim for breach of the Design Fee Agreement. Nor does it affect the validity of the merger clause.

In sum, the Court finds that the Amended Exclusivity Agreement supersedes the Design Fee Agreement.[2] Accordingly, Plaintiffs have failed to state a claim for breach of the Design Fee Agreement. *See Dow Chem. Co.*, 2022 WL 17406392, at *3.

### B. Count 5: Breach of the Consulting Agreement

Plaintiffs assert that Plug breached the Consulting Agreement between Thomas and Plug, arguing that Plug terminated the agreement early and owes Thomas $400,000 in lost profits. Defendants contend that the Consulting Agreement has a mandatory forum selection clause and move for dismissal for improper venue under Rule 12(b)(3) or, alternatively, 18 U.S.C. § 1406(a).

Rule 12(b)(3) and 18 U.S.C. § 1406(a) apply only when venue is "wrong" or "improper" under federal venue laws. *Atl. Marine Const. Co.*, 571 U.S. at 58. In instances, such as the present case, where venue is proper under federal venue statutes, 18 U.S.C. § 1404(a)'s transfer provision provides the proper mechanism for enforcing a forum selection clause. *Id.* As a result, although Defendants move for dismissal under either 12(b)(3) or § 1406(a), the Court finds that § 1404(a) is the correct vehicle for analyzing whether this dispute should be transferred pursuant to a forum selection clause.[3]

---

[2] Because the Court finds that the Amended Exclusivity Agreement was superseded, it does not reach Defendants' additional argument that the Amended Exclusivity Agreement lacked an essential term and was therefore unenforceable.

[3] Although Defendants did not move for transfer under § 1404(a), "[a] transfer of venue may be made upon the motion of any party or by the court *sua sponte.*" *Empty Barge Lines II, Inc. v. Dredge Leonard Fisher*, 441 F. Supp. 2d 786, 789 (E.D. Tex. 2006) (citing *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989)).

Here, the Consulting Agreement contains a forum selection clause mandating that "[a]ny action or proceeding arising out of this Agreement shall be commenced exclusively in courts located in Albany, New York." ECF No. 11-1 at 5. Plaintiffs do not contest that the Consulting Agreement contains a mandatory forum selection clause that applies to this litigation. Rather, they resist its application on the grounds that enforcement would be unreasonable.

A party may avoid enforcement of a forum selection clause if doing so would be "'unreasonable' under the circumstances." *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997). Enforcement may be unreasonable where

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state."

*Id.*

Plaintiffs do not show any of these factors are present in this case. Rather, they contend that enforcing the clause would be unreasonable because Albany, New York would be inconvenient for trial given the location of the parties and potential witnesses. Additionally, they note that the Amended Exclusivity Agreement, which underlies one of their other claims, has a forum selection clause mandating litigation in Harris County, Texas.

These arguments are unpersuasive. To overcome a forum selection clause, the difficulty in accessing the contractually agreed upon forum must be so grave that it functionally deprives the litigant of their day in court. *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 18 (1972). Garden variety inconvenience to parties or witnesses is insufficient. "When parties agree to a forum-

selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const. Co.*, 571 U.S. at 64. The challenges associated with litigating different claims in different states is similarly inadequate. *See Bilodeau v. Ahern Rentals, Inc.*, No. 4:21-CV-2209, 2021 WL 8016841, at *3 (S.D. Tex. Aug. 20, 2021) ("The inconvenience a party experiences from attending proceedings and trials in another state will not prevent enforcement of a forum selection clause." (quoting *Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F. Supp. 3d 394, 418 (E.D. Tex. 2021))).

Plaintiffs have failed to show that enforcement of the forum selection clause would be unreasonable. Accordingly, the Court finds that Plaintiffs' claim for breach of the Consulting Agreement should be severed and transferred to the Northern District of New York pursuant to the forum selection clause's edict that the claim be litigated in Albany, New York.

### C. Counts 6 through 9: Common Law Torts

Plaintiffs bring common law claims for tortious interference with prospective business relationships (Count 6), unfair competition (Count 7), breach of fiduciary duty (Count 8), and conspiracy (Count 9). Defendants argue that these claims are preempted under the Texas Uniform Trade Secrets Act (TUTSA). TEX. CIV. PRAC. & REM. CODE § 134A.001 *et seq.*

TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134A.007(a); *AMID, Inc. v. Medic Alert Found. U.S., Inc.*, 241 F. Supp. 3d 788, 825 (S.D. Tex. 2017). To determine whether a claim is preempted, the central question is whether "the factual basis of the

9

common law claim, as pleaded, would not exist 'without the use of alleged trade secrets.'" *Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517, 533 (Tex. App. 2020) (quoting *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.)). In contrast, "[a] claim is not preempted if the plaintiff is able to show the claim is based on facts unrelated to the misappropriation of the trade secret." *360 Mortgage Grp., LLC v. Homebridge Fin. Servs., Inc.*, 2016 WL 900577, at *6–*7 (W.D. Tex. March 2, 2016). The fact that a common law claim requires different legal elements than a TUTSA misappropriation claim is not sufficient to avoid preemption. *AMID*, 241 F. Supp. 3d at 826. Rather, this inquiry is concerned with the similarity of the *facts* that underly the respective claims. *Id.*

As a preliminary matter, it is helpful to delineate the precise factual basis for Plaintiffs' TUTSA claim. The alleged trade secrets at issue in Plaintiffs' TUTSA claim are their "proprietary hydrogen liquefaction technology" as well as related "technology, process designs, know-how, and improvements and enhancements, process simulations, financial information, business operation methods, the identity of JTurbo's vendors and customers, and JTurbo's pricing." ECF No. 1 ¶ 95. Plaintiffs allege that Defendants misappropriated their trade secrets by using the process design without compensation, failing to license their hydrogen liquefaction technology for each project using that design, agreeing to sell units using the design to Nikola and TC Energy without consulting JTurbo, disclosing or using the trade secrets without JTurbo's consent, and marketing technology using the trade secrets to other businesses. ECF No. 1 ¶ 98-100. Whether each of Plaintiffs' tort claims involve the same factual basis as their TUTSA misappropriation claim is analyzed below.

### i. Count 6: Tortious Interference with Prospective Business Relationships

Plaintiffs allege that Defendants engaged in tortious interference with prospective business relationships when Defendants used the alleged trade secrets to court clients and excluded Plaintiffs from those dealings. Specifically, they argue that "Defendants have used Plaintiffs' . . . technology, including its trade secrets, process simulations, the process designs, know-how, and improvements and enhancements, to obtain clients knowing that it would damage Plaintiffs." ECF No. 1 ¶ 127. In doing so, Plaintiffs explicitly ground this claim in Defendants' misappropriation of trade secrets.

Moreover, to prove tortious interference with prospective business relationships, one must show, among other things, that "the defendant's conduct was independently tortious or unlawful." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). In attempting to satisfy this requirement, Plaintiffs find themselves in a bind. In their Complaint, Plaintiffs' allegation that Defendants' conduct was independently tortious or unlawful is predicated entirely on the assertion that Defendants misappropriated Plaintiffs' trade secrets to obtain clients. Plaintiffs identify no other unlawful conduct to satisfy this element. As a result, TUTSA preempts Plaintiffs' tortious interference with prospective business relationships claim. *See Pittsburgh Logistics Sys., Inc v. Barricks*, No. 4:20-CV-04282, 2022 WL 705870, at *10 (S.D. Tex. Mar. 9, 2022) (finding that TUTSA preempted a tortious interference claim where the plaintiff relied on allegations of misappropriation to fulfill the independent tort element); *WeInfuse, LLC v. InfuseFlow, LLC*, No. 3:20-CV-1050-L, 2021 WL 1165132, at *7 (N.D. Tex. Mar. 26, 2021) (concluding that TUTSA preempted a tortious interference claim where both relied on factual allegations that defendants used confidential information without authorization).

### ii. Count 7: Unfair Competition by Misappropriation

Plaintiffs allege that Plug engaged in unfair competition by misappropriation when it used their "protected and secret information to undercut Plaintiff[s] in the Cryogenic Liquefaction market, causing commercial damage." ECF No. 1 ¶ 132. In doing so, they again explicitly stake their unfair competition claim on Defendants' supposed use of their trade secrets. Moreover, in order to state a claim for unfair competition, one must show that they created a product "through extensive time, labor, skill, and money." *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 572 (Tex. App. 2014). In attempting to meet this requirement, Plaintiffs detail how "[i]t took JTurbo years to develop the designs and trade secrets." ECF No. 1 ¶ 130.

Moreover, both their TUTSA and unfair competition claims involve the same factual allegations. That is, both seek redress for the fact that Defendants are advertising a product that utilizes Plaintiffs' hydrogen liquefaction technology. Plaintiffs' unfair competition claim is therefore preempted by TUTSA. *See EthosEnergy Field Services, LLC v. Axis Mech. Group, Inc.*, No. CV H-21-3954, 2022 WL 2707734, at *7 (S.D. Tex. June 10, 2022), *report and recommendation adopted*, No. CV H-21-3954, 2022 WL 2704853 (S.D. Tex. July 11, 2022) ("Because the unfair competition by misappropriation as alleged is based on the misappropriation of trade secrets, it is preempted by TUTSA and should be dismissed.").

### iii. Count 8: Breach of Fiduciary Duty

Plaintiffs' breach of fiduciary duty claim is similarly preempted. Their Complaint again expressly links this claim to the alleged misappropriation of trade secrets, stating that "Joule had

a fiduciary duty to not disclose JTurbo's trade secrets." ECF No. 1 ¶ 136; *see also* ECF No. 1 ¶ 139 ("JTurbo sustained damages as a result of Joule's breach of fiduciary duty to not disclose JTurbo's trade secrets."). Because the facts underlying their breach of fiduciary duty claims rely on Defendants' alleged misappropriation of their trade secrets, TUTSA preempts these claims. *See Pittsburgh Logistics Sys., Inc v. Barricks*, No. 4:20-CV-04282, 2022 WL 705870, at *10 (S.D. Tex. Mar. 9, 2022) (breach of fiduciary duty claim preempted by TUTSA when both relied on the use of trade secrets).

In their Response to Defendants' Motion to Dismiss, Plaintiffs attempt to recharacterize this claim, arguing that its instead about Joule's supposed failure to include Thomas and JTurbo in sales of hydrogen liquefaction plant units. ECF No. 23 ¶ 8. There are two problems with this argument. First, it is wholly unsupported by their Complaint's description of the alleged breach of fiduciary duty, which is predicated entirely on Joule's supposed use of trade secrets and does not mention the sales meetings. Second, even if this were not the case, Plaintiffs' TUTSA misappropriation claim seeks, in part, to redress the same harm allegedly resulting from these sales. Thus, even if Plaintiffs' breach of fiduciary duty claim were based on their exclusion from these sales, it would still be preempted.

### iv.  Count 9: Conspiracy to Commit Breach of Fiduciary Duty

Finally, Plaintiffs allege that Plug participated in a conspiracy with Joule to "obtain JTurbo's trade secrets, process simulations, and designs," tethering their conspiracy claim to the

misappropriation of trade secrets.[4] ECF No. 1 ¶ 144. Further, in describing their conspiracy claim, they assert that "Plug knew that Joule had a fiduciary duty to not disclose JTurbo's trade secrets, process simulations, and designs" and that "Plug knowingly participated in Joule's breach of fiduciary duty to JTurbo to not disclose JTurbo's trade secrets, process simulations, and process designs." *Id.* ¶ 143-44. Because this claim relies on the alleged misappropriation of trade secrets, TUTSA similarly preempts it. *See Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*, No. 3:19-CV-970-X(BH), 2020 WL 2487057, at *7 (N.D. Tex. Feb. 7, 2020), *report and recommendation adopted*, No. 3:19-CV-00970-X, 2020 WL 1428941 (N.D. Tex. Mar. 24, 2020) (finding conspiracy claim preempted by TUTSA where it relied on the misappropriation of trade secrets and confidential information).

Moreover, civil conspiracy "requires an underlying tort that has caused damages." *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). "[W]hen plaintiffs fail to state a claim for any underlying tort, their claims for civil conspiracy likewise fail." *Tummel v. Milane*, 787 F. App'x 226, 227 (5th Cir. 2019). Because Plaintiffs here have failed to state a claim for breach of fiduciary duty, their claim for conspiracy to commit breach of fiduciary duty must also fail as a matter of law.

### D. Leave to Amend

Plaintiffs request leave to amend any claims the Court finds deficient. Leave to amend should be freely given, absent a reason to deny such leave. *See* FED. R. CIV. P. 15(a); *Foman v.*

---

[4] Although Plaintiffs' list implies that the process simulations and designs are distinct from the alleged trade secrets, elsewhere they define their trade secrets to include "process simulations" and "process designs." ECF No. 1 ¶ 87.

*Davis*, 371 U.S. 178, 182 (1962). A district court need not grant such leave, however, where amendment would be futile. *See Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 531 (5th Cir. 2004). Here, the Court concludes that amendment of Plaintiffs' common law tort claims would be futile as they have shown no factual bases for those claims that would escape TUTSA preemption. Similarly, amendment of their claim for breach of the Design Fee Agreement would be futile, as that agreement was superseded by the Amended Exclusivity Agreement.

### IV. CONCLUSION

The Court **GRANTS IN PART** Defendants' Motion to Dismiss, and **DISMISSES WITH PREJUDICE** Counts 4, 6, 7, 8, and 9. The Court further **SEVERS** Count 5 and **TRANSFERS** that claim to the United States District Court for the Northern District of New York, Albany Division.

**IT IS SO ORDERED.**

Signed at Houston, Texas on December 5, 2023.

_____
Keith P. Ellison
United States District Judge